Daniel R. Laurence (WSBA # 19697)
Brad J. Moore (WSBA # 21802)
STRITMATTER KESSLER KOEHLER MOORE
3600 15th Ave. W., Suite 300
Seattle, WA 98119
Telephone: (206) 448-1777

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT RICHLAND

| | |
|---|---|
| SIMONA G. MARIE and THOMAS LEWIS, spouses, and ALTCONT, LLC, a Washington limited liability company, | CAUSE NO. 4:23-cv-5093 |
| Plaintiffs, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| PACIFIC LIFE INSURANCE COMPANY, a foreign corporation; HARDING FINANCIAL PARTNERS, INC. a foreign corporation; ANDREW J. BROWN, an individual; and UNKNOWN DEFENDANTS 1 through 5, unknown individuals and/or entities, | |
| Defendants. | |

Plaintiffs Simona G. ("Simona") Marie and Thomas ("Tom") Lewis, by and through their undersigned attorneys, allege as follows:

COMPLAINT & JURY DEMAND - 1

## I.    **PARTIES**

1. <u>Plaintiffs</u>.  At all times pertinent to this action, Plaintiffs Simona Marie and Tom Lewis have been a married couple residing in Richland, Benton County in the state of Washington.   Plaintiff Altcont, LLC was a Washington limited liability company, with its headquarters in Richland, Benton, County, Washington, which was incorporated on December 18, 2017 and voluntarily dissolved on March 25, 2022.  Its affairs have not been wound up.  Simona Marie and Tom Lewis were co-equal members of Altcont, LLC. Simona Marie was the sole governor of Altcont, LLC.

2. <u>Defendant Pacific Life Insurance Company</u>.  At all times pertinent to this action, Defendant Pacific Life Insurance Company ("PacLife") has been a business entity arising and existing under the laws of the state of Nebraska, with its headquarters at 700 Newport Center Dr., Newport Beach, CA 92660.  At all times material to this action, PacLife has been authorized by the state of Washington Office of the Insurance Commissioner to sell disability and life insurance.

3. <u>Defendant Harding Financial Partners, Inc</u>. At all times material to this action: Defendant Harding Financial Partners, Inc. ("HFPI") has been a business entity organized and existing under the laws of the state of Utah, with its headquarters at 4245 Wasatch Blvd. #210, Salt Lake City, Utah. Beginning on or about October 17, 2017, and at all times thereafter pertinent to this action,  HFPI has

COMPLAINT & JURY DEMAND - 2

been an agent of PacLife registered as an insurance producer with the state of Washington Office of the Insurance Commissioner under its identification number 964965. HFPI has held itself out as a financial planning organization dedicated to offering an array of coordinated investment planning and personal insurance options to its clients looking to build, protect and distribute their personal wealth. HFPI has held itself out to the public as a wealth management organization dedicated to assisting successful medical professionals and small business owners in developing comprehensive solutions to decisions regarding their wealth.

4. <u>Defendant Andrew J. Brown</u>. Defendant Andrew J. ("Andy") Brown is a resident of Utah and is domiciled there. Beginning on October 18, 2017, and at all times thereafter material to this action, he has been registered as an insurance producer for PacLife and HFPI with the state of Washington Office of the Insurance Commissioner under its identification number 965117, and with a business address of 6405 S. 3000 E, Ste. 250, Holladay, UT 84121-6970. Beginning on October 4, 2019 through the present, he has been registered with the state of Washington Office of the Insurance Commissioner as an insurance producer for Raymond James Insurance Group, Inc. His National Association of Insurance Commissioners' National Producer Number is 16890993. At all times pertinent to this action: Andy Brown has been a financial advisor for HFPI and a managing officer of HFPI. Mr. Brown and his team of specialists have held themselves out as helping clients in the

COMPLAINT & JURY DEMAND - 3

areas of estate, business succession, retirement, risk management, tax strategies, and financial planning. Mr. Brown and his team of specialists have held themselves out as working closely with their clients' accountants, attorneys and other advisors.  Mr. Brown and his team of specialists have held themselves out as conversant with the major points of law and regulations that affect their client's financial statements.

5. <u>Unknown Defendants</u>.  Unknown Defendants are unknown individuals and/or entities, other than Plaintiffs, who were involved, directly or through their agents, in making representations to and/or facilitating the purchase of the insurance policy at issue in this lawsuit and/or profiting from that policy. Subject to further investigation and discovery, they may include, but are not limited to, any other entity of which Andy Brown is an owner or agent, including but not limited to: Raymond James Insurance Group, Inc., and Planning Corporation of America.

## II.    **JURISDICTION & VENUE**

6. <u>Subject matter jurisdiction</u>.  This Court has jurisdiction over the subject matter of this lawsuit, pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, plaintiffs and defendants are citizens of different states, and no defendant is a citizen of the state of Washington.

7. <u>Personal jurisdiction</u>.  This Court has personal jurisdiction over each of the Defendants because this cause of action arises out of alleged wrongful acts

COMPLAINT & JURY DEMAND - 4

Defendants committed in the state of Washington through acts and/or omissions occurring in the state of Washington and affecting Plaintiffs in the state of Washington. Specifically, Defendants, by and through their agents, promoted, sold and distributed the insurance policy at issue into the state of Washington and to its residents including Plaintiffs, received consideration from Plaintiffs while they were located in the state of Washington, and/or sent regular statements and a payment to Plaintiffs located in the state of Washington; and as a result of those activities, incurred obligations and liabilities to Plaintiffs located in the state of Washington. In this matter each Defendant was timely served with process at a place and in a manner authorized by law.

8. <u>Venue</u>.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because  this action is brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Alternatively, on information and belief, at least one corporate defendant has contacts with this Court and with this District sufficient to subject it to personal jurisdiction within this Court and District as if that district were a separate state, or if there is no such district, at least one such corporate defendant has the most significant contacts within this District. For example, PacLife lists financial professionals located in Richland, Kennewick and Yakima Washington selling its products, presumably to Washington citizens residing in or around those municipalities.

COMPLAINT & JURY DEMAND - 5

### III.    <u>FACTS GIVING RISE TO LIABILITY</u>

9. <u>PDX Policy</u>. In February 2017, PacLife started selling a type of Indexed Universal Life ("IUL") insurance policy called Pacific Discovery Xelerator ("PDX"). The policy was marketed as an investment to build substantial long-term cash value through appreciation, by contrast to most life insurance which is marketed to provide a death benefit usually at a relatively low periodic cost. PDX policies carry high risk and high leverage for an IUL product. To allay consumer concerns about that high risk, PacLife also sought to convince buyers of PDX policies that they were protected from downside market risk by a guaranteed 0% credit interest rate.

10. <u>Nature</u>.  PDX policies are extremely difficult for consumers and perhaps even brokers to understand.  The sales illustrations overstate future performance and do not disclose key assumptions, including but not limited to PacLife's so-called "Performance Factor", that produce extremely high fee costs and risks.

11. <u>Actuarial Guideline 49</u>.  National Association of Insurance Commissioners (NAIC") promulgated its Actuarial Guideline 49 ("AG 49"). AG 49 became effective for all policy illustrations generated on or after September 1, 2015. AG 49's purpose is to prevent insurers and their agents from presenting misleading illustrated interest rates and returns to sell IUL policies.  The guideline was a reaction to misleading practices of insurance companies and their agents that had been

COMPLAINT & JURY DEMAND - 6

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

seeking to outdo their competition's illustrations by showing life insurance consumers potentially unrealistic illustrated policyholder returns based on self-servingly selected past periods of market performance that were not representative of conditions likely to recur (sometimes called "backcasting" or "index selection"), and/or otherwise based on unsustainable projections.  In response to industry concerns that these high illustrated rates were highly unlikely to be achieved, could lead to widespread consumer disappointment and potentially damage the reputation of the entire life insurance industry, NAIC promulgated AG 49, which limited the annual S&P 500 index-based rate of return used to illustrate the projected growth of IUL policy investments. AG 49 set a benchmark rate based on annual returns on S&P 500 starting 66 years before the current calendar year and calculated using the geometric average for successive 25-year periods. In this way, AG 49 prohibited insurers from assuming higher crediting rates to pump up illustrated investment growth in IUL policies.

12. <u>Performance Factor</u>.  The uniformity NAIC sought to impose was soon undermined to the detriment of consumers. To boost illustrations and evade AG 49, PacLife adopted the PDX Performance Factor. The PDX Performance Factor was an unspecified non-guaranteed proprietary multiplier applied after policy year 3 as a factor to indexed credits. The Performance Factor inflated projected rates of return to IUL policy value, and thereby circumvented the S&P 500 index limitation

COMPLAINT & JURY DEMAND - 7

addressed by AG 49. The Performance Factor was used by PacLife and its agents to market and sell PDX policies based on practically unattainable policy performance illustrations of returns that are well beyond those that would result from applying AG 49. PacLife and its agents used the Performance Factor to convince policyholders that PDX policies were more lucrative than competing life insurance products that lacked a similar multiplier. PacLife and its agents further concealed and confounded the role of the Performance Factor in building up the stated dollar values in PDX illustrations by making reference to the "underlying Index" and indicating that its "historical performance … should not be considered a representation of past or future performance of the Indexed Accounts."

13. <u>Performance Factor Characteristics</u>. The PDX Performance Factor is a multiplier that applies to index credits after the third policy year, and was guaranteed to be not less than 1. The Performance Factor is based at least in part upon assumed but realistically unsustainable options trading profits. The illustrations defer non-guaranteed value growth into years that are well beyond current actuarial life expectancies. PacLife used the Performance Factor as an unexplained, or at least underexplained, discretionary and illusory guaranty that would allow PacLife to collect extremely high fees without delivering the illustrated returns or anything like them.

COMPLAINT & JURY DEMAND - 8

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA 98119
(206) 448-1777

14. <u>Policy Charges</u>. PDX policy charges are used to buy call options that are subject to market volatility, and thus market risk, which can reduce PDX account value; contrary to the policy's zero-percent minimum interest crediting guarantee. In addition, PDX policy illustrations assume call options will generate a fifty percent profit in perpetuity on each transaction, contrary to actuarial reason. The high charges and unrealistically high option trading profit projections lead to indefensibly inflated illustrated performance and value without full disclosure of the associated substantial market risk.

15. <u>Additional Premiums</u>.  PDX policies present a substantial risk that poor index performance and/or failure to realize projected option profits will cause negative returns on policyholder account values, and could cause the policy to lapse, unless the policyholder pays additional substantial premiums. Those premiums would be more than the policyholder had been led to believe would be required to generate the projected eventual payout.  This cold reality directly contradicted PacLife's misrepresentations that PDX policyholders faced no downside market risk.  Furthermore, the PDX illustrations falsely suggested that the single-digit disclosed interest crediting rate would lead to "conservative" double-digit returns, when in fact those projected returns were the result of the undisclosed and mysterious Performance Factor, reportedly responsible for over one third of illustrated performance.

COMPLAINT & JURY DEMAND - 9

16. <u>Comparative Risk</u>. No IUL product in the industry contemporaneous with the PDX policy was riskier than the PDX policy.

17. <u>Sales Incentive</u>. To further encourage the sale of PDX policies, PacLife offered its agents commissions up to three times higher than other policies when a substantial portion of the policy's face amount was allocated to base coverage, as distinct from term coverage provided under an Annual Renewable Term Rider. Plaintiffs did not purchase such a rider.

18. <u>Illustration enhancement</u>. PDX told at least some of its life insurance producers and others that the PDX policy "illustrates particularly well when funded with large premiums within the policy's first 7 to 10 years" based on the "performance factor that may increase policy performance on a nonguaranteed basis," and that its Performance Factor may enhance indexed interest credits.

19. <u>AG 49-A</u>. In late 2020, NAIC promulgated Actuarial Guideline 49-A entitled *The Application of the Life Illustrations Model Regulation to Policies with Index-Based Interest to Policies Sold On or After December 14, 2020* ("AG 49-A"). AG 49-A is designed to further protect life insurance consumers by preventing insurers and their agents from presenting misleading illustrated interest rates and returns to sell IUL policies. AG 49-A specifically prohibits the prospective use of mechanisms such as the PacLife Performance Factor. AG 49's purpose is to address the confusion potential policy buyers and uncertainty among illustration actuaries

COMPLAINT & JURY DEMAND - 10

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

that results from lack of uniformity when evaluating policies such as the PDX policy, particularly in comparison with competing policies, in order to bring uniformity to illustrations of life insurance policies that are tied to an external index or indices by providing a reasonable cap on the illustrated crediting value.

20. <u>Surrender Charges</u>.  Upon purchasing a PDX policy, the policy language gives PacLife the right to retain huge surrender charges in the first ten years, which creates a powerful disincentive to the policyholder to the surrender the policy while PacLife is collecting exorbitant fees.

21. <u>Knowledge</u>.  PacLife was fully aware of the characteristics of PDX policies that made them both highly marketable and highly profitable. PacLife knew that the embedded and concealed option profit assumptions in the PDX illustrations and based on the non-guaranteed Performance Factor would be unsustainable. Accordingly, PacLife knew that the returns depicted in the illustrations could not be realized.  PacLife is a sophisticated insurance company, and therefore either knew or reasonably should have known that other insurers, including MetLife, New York Life, Northwestern Mutual and OneAmerica submitted a joint position statement to the NAIC that explained that illustrations showing projected earnings of fifty percent annual returns, year after year, are the product of "an unreasonable long-term assumption, which creates unrealistic consumer expectations."  They explained:

There is little, if any, reason to believe that options systematically

COMPLAINT & JURY DEMAND - 11

deliver meaningful profits to the buyer over extended periods of time for the following reasons:

1) Options are financial instruments with contingent payoffs. As is well documented in academic literature, the expected price to enter an option transaction is the present value of its expected future payoff – in other words, a zero profit baseline assumption.

2) In an option transaction, both parties assume risk on opposite sides of the same trade. As a result, evaluating options transactions under a long-term risk/return framework is not particularly useful….

3) The best analogy for options is insurance. Using an option to hedge is analogous to buying an insurance policy because the held risk is transferred to a third party. As with any insurance policy, we should expect the seller to recoup profits for accepting risk over the long run….

4) The best evidence against the idea of systematic profits to option buyers is the fact that investment professionals, endowments and pension funds do not employ the strategy as a way to enhance returns with very little risk, as is argued with IUL products. … [I]f buying options is so incredibly profitable and has been for such a long time with so little variation, then why doesn't everyone do it and why aren't life insurers employing this strategy to generate higher returns in their own general accounts?

Neither PacLife nor any of its agents educated Plaintiffs about these concerns.

22. Agent Representations. On or about December 11, 2017, PacLife's agents, HFPI and Andy Brown, presented Simona Marie and Altcont with a life insurance policy illustration of a PacLife PDX policy. The illustration showed that for an initial $ 1,000,000 premium spread over five annual $ 200,000 payments, by policy year 19, when Simona Marie would reach the age of 67, the policy's non-guaranteed surrender value would be $ 1,859,657; by policy year 52, when Simona Marie would

COMPLAINT & JURY DEMAND - 12

reach the age of 100, the policy's non-guaranteed surrender value would be $ 1,418,244; and by policy year 71, when Simona Marie would reach the age of 119, the policy's non-guaranteed surrender value would be $ 90,607,751, assuming she were to take annual policy loans of $ 250,695 starting at policy years 19 to 52 when she would be ages 67 to 100.

23. <u>Charges Unexplained</u>.  Although the illustrations Andy Brown provided to Simona Marie and Altcont illustrated policy charges based on non-guaranteed values, Andy Brown did not fully explain to Simona Marie or to her spouse Tom Lewis, or to Altcont, the nature and purpose of those charges.

24. <u>Performance Factor Unexplained</u>.  At no time before Plaintiffs purchased the PDX Policy did PacLife or any of its agents accurately explain to Plaintiffs the formula PacLife used to determine the Performance Factor, and the effect of the Performance Factor on its illustrations, including, but not limited to, any side-by-side comparison to illustrations comporting with the alternative methods contemplated in AG 49.

25. <u>Performance Factor Used</u>.  The illustrations Andy Brown provided to Simona Marie and Tom Lewis were generated using PacLife's illustration software, and contained the Performance Factor. The illustration was therefore not realistically achievable and was false.

COMPLAINT & JURY DEMAND - 13

26. <u>Policy purchase</u>. On or about 12/15/2017, Plaintiffs acting through Simona Marie purchased a PDX policy on her life through PacLife's agents, HFPI and Andy Brown. The policy number was VF531193770 and had a policy issue date of 12/8/2017. The designated policy owner and insured were each Plaintiff Simona Marie. The face value of the policy was $ 4,522,500. The death benefit was contracted to be the face value plus the policy's accumulated value. Her designated death beneficiary was her spouse, Tom Lewis.

27. <u>Purposes</u>. In addition to the PDX policy's death benefit, the policy permitted Simona Marie to take loans against the policy based on the growth of the premiums invested. Simona Marie and Tom Lewis purchased the policy with the intent to provide them with income in retirement.

28. <u>Policy Performance Factor</u>. Simona Marie's PDX policy Guaranteed Minimum Performance Factor was 1.00 for each Segment Term. The Policy Specifications provided that the Performance Factor "is the factor used to determine the final Segment Indexed Interest and Segment Guaranteed Interest Rate. The Guaranteed Minimum Performance Factor is shown above [*i.e.*, 1.00 for each Segment Term]. We may declare a higher Performance Factor. Certain policy charges may be used in determining the Performance Factor."

29. <u>Alternate Loan Rider</u>. Simona Marie's PDX policy included an Alternate Loan Rider.

COMPLAINT & JURY DEMAND - 14

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA 98119
(206) 448-1777

30. <u>Benefit Distribution Rider</u>.    Simona Marie's PDX policy included a Benefit Distribution Rider. That rider provided that all, or a portion of the policy's Death Benefit Proceeds would be paid over 30 years as a series of monthly Periodic Payments at a benefit Distribution guaranteed Interest Rate of 2 percent.

31. <u>No-Lapse Guarantee Rider</u>.    Simona Marie's PDX policy included a No-Lapse Guarantee Rider with a guarantee period of 20 years and initial premium of $ 111,156.00.

32. <u>Premium Payment</u>.    Plaintiff Altcont, LLC paid premiums on Simona Marie's PDX policy.    Altcont, LLC was funded by revenue generated by Simona Marie in her medical practice.

33. <u>2017-18 Premium</u>.    On or about December 18, 2017, Altcont, LLC made an initial annual premium payment of $ 200,000 to PacLife.

34. <u>Statement 3/7/2018</u>.    PacLife sent Simona Marie a statement of her PDX policy for the period 12/8/2017-3/7/2018. Among other things, the statement stated Accumulated Value in that period of $ 164,090.86.

35. <u>Assurance and Reliance</u>.    In March 2018, Simona Marie and Tom Lewis told Andy Brown that Plaintiffs were concerned that the fees PacLife charged for the PDX policy seemed very high. Andy Brown assured Simona Marie and Tom Lewis that the fees were appropriate and they would get their money back in the end. Plaintiffs relied on these assurances.

COMPLAINT & JURY DEMAND - 15

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

36. <u>Policy Charges 12/8/2017-12/7/2018</u>. From Plaintiffs' contributions and accumulations, PacLife paid itself policy charges of $ 110,409.88 in the period 12/22/2017-12/7/2018.

37. <u>2018-19 Premium</u>. On 12/11/2018, Altcont, LLC paid PacLife a second $ 200,000.00 annual premium on Plaintiffs' PDX policy.

38. <u>Policy Charges 12/8/2018-12/7/2019</u>. From Plaintiffs' contributions and accumulations, PacLife paid itself policy charges of $ 99,415.40 in the period 12/8/2018-12/7/2019.

39. <u>Lower Premium</u>.  In October 2019, Andy Brown assured Plaintiffs that they could modify their PDX policy benefits by reducing the amount of their premium to $ 35,000 in the last three of the five years of the premium payment period, in exchange for reduced financial benefits, including reduced annual income to $ 117,000 per year from ages 65 to 100, and "You would have the money back you put into the plan in 4 ½ years". No illustration of the benefits to be obtained through the revised premiums was provided to Plaintiffs. This projection was apparently  based on a projection Andy Brown ran in his head.

40. <u>Reduction</u>.  In reliance on Andy Brown's representations as described in the preceding paragraph, on or about November 21, 2019, Plaintiffs and Defendants agreed to revise Plaintiff's anticipated third, fourth and fifth-and-final annual "Flexible Premium Indexed Adjustable Life Insurance" PDX policy premiums from

COMPLAINT & JURY DEMAND - 16

1    $ 200,000 to $ 35,000 per year, in exchange for the projected reduced future 30-year

2    benefit.

3        41.October 10-11,2019 Emails.  On October 10, 2019 and October 11, 2019,

4    Simona Marie and Tom Lewis had the following email exchange with HFPI and

5

6    Andy Brown:

7            **From:** simona marie <sgmarie@yahoo.com>
             **Sent:** Thursday, October 10, 2019 12:28 PM
8            **To:** Andy Brown <andy.brown@hardingfp.com>
             **Cc:** Tom Lewis <tomlewis2005@yahoo.com>
             **Subject:** Pacific Life new yearly premium
9

10           Hi Andy!

             It was nice talking to you on Monday.

11           When do you think you can send us the new numbers considering the fact that we want
             to lower the Pacific Life yearly premium to $ 33,333.33?

12           Thanks!

13           Simona and Tom

14

15           andy.brown@hardingfp.com

             To: 'simona marie' <sgmarie@yahoo.com>
16
             Cc: 'Tom Lewis' <tomlewis2005@yahoo.com>

17           Hello Simona and Tom,

18           I heard back from the TPA and he ran the numbers for you corporate sponsored group life plan. You can
             reduce the premium to $33,333 for the next 2 years on the final year you will have to add another $5k
             depending on the returns of the investment account.  He said it would be better if you can do $35,000 for
19           the next three years.  The income will be $117,000 a year from age 65 to 100.  You would have the money
             back you put into the plan in 4 ½ years.  Let me know you thoughts or if you would like me to schedule a
20           call to go over the details.

21           Talk to you soon,

             Andy Brown
22           Vice President of Investments
             Harding Financial Partners
             4525 Wasatch Blvd #210
23           Salt Lake City, UT 84124
             andy.brown@hardingfp.com
             (W) 801.349.3545   (C) 801.717.8384   (F)  801.349.3544
24

     COMPLAINT & JURY DEMAND - 17              Stritmatter Kessler Koehler Moore
                                               3600 15th Avenue West, Suite 300
                                               Seattle, WA  98119
                                               (206) 448-1777

42. <u>No Illustration of Change</u>.  No Defendant provided Plaintiffs an illustration concerning the impact of reduced premiums on the policy payments or benefits.

43. <u>No Warning of Lapse: 2017</u>.  The Narrative Summary contained in the life insurance illustration Andy Brown had provided Simona Marie on or about December 11, 2017 (nearly two years earlier) contained a vague statement that "If you pay lower premiums than illustrated or policy performance is less favorable than illustrated, there is an increased risk of policy lapse, particularly in the early years." A footnote in the illustration states, in part, "A zero in the Premium Outlay column does not mean the policy is paid up. Charges will continue to be deducted from the Accumulated Value as long as the policy remains in-force. The actual premium amounts and number of years of premium payments that are needed to maintain the illustrated non-guaranteed policy benefits will depend on the policy's non-guaranteed elements and on your actual use of the policy's options."  However, that illustration has $ 200,000, not zero, in the premium outlay column for years 1 through 5 of the policy.

44. <u>No Warning of Lapse: 2019</u>.  Up to November 21, 2019, neither Andy Brown nor anyone else at HPFI made any mention to Plaintiffs that reducing Simona Marie's PDX policy annual premium to $ 35,000, and/or changed market conditions, could cause the policy to lapse. Nor did any Defendant explain to Simona Marie or Tom Lewis why or exactly how market conditions could increase the risk of policy

COMPLAINT & JURY DEMAND - 18

lapse. Nor did any Defendant tell Plaintiffs that they would need to make contributions after the first five years of premium payments were paid in full to keep the policy from lapsing. In fact, the October 11, 2019 email from HPFI and Andy Brown to Simona Marie and Tom Lewis suggested the contrary.

45. PacLife's Discretion. The Narrative Summary contained in the life insurance illustration Andy Brown had provided Simona Marie on or about December 11, 2017 admits, "This illustration assumes that currently illustrated non-guaranteed elements will continue as shown for all years illustrated." The Narrative Summary also states, "Non-guaranteed/current elements are not guaranteed by definition. As such, Pacific Life Insurance Company reserves the right to change or modify any of these elements. This right to change these elements is not limited to a specific time or reason." A footnote on the illustration's Policy Loan Details states, "The actual premium amounts and number of years of premium payments that are needed to maintain the illustrated non-guaranteed policy benefits will depend on the policy's non-guaranteed elements and on your actual use of the policy's options." The Narrative Summary also states, "You may also request illustrations with different assumptions to better understand how the policy charges and non-guaranteed elements, like interest crediting rates and/or policy loans and withdrawals, will affect the policy Accumulated Value and Death Benefit." Yet, up to the time that statement was provided, no Defendant explained to any Plaintiff

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA 98119
(206) 448-1777

what any such change could be or how it could affect the policyholder's benefits.

46. <u>2019-20 Premium</u>.     On or about 11/18/2019, Altcont, LLC timely paid PacLife the third annual premium in the amount of $ 35,000.

47. <u>Policy Charges 12/8/2019-12/7/2020</u>. From Plaintiffs' contributions and accumulations, PacLife paid itself policy charges of $ 100,872.36 in the period 12/8/2019-12/7/2020.

48. <u>2020-21 Premium</u>.   On  or about 11/17/2020, Altcont, LLC timely paid PacLife the fourth annual premium in the amount of $ 35,000.

49. <u>Policy Charges 12/8/2020-12/7/2021</u>. From Plaintiffs' contributions and accumulations, PacLife paid itself policy charges of $ 100,649.22 in the period 12/8/2020-12/7/2021.

50. <u>2021-22 Premium</u>.   On or about 11/14/2021, Altcont, LLC timely paid PacLife the fifth-and-final annual premium in the amount of $ 35,000.

51. <u>Administrative Fees</u>.   On or about each of 12/18/2017, 1/5/2019, 10/20/2019, 12/5/2020, and 11/14/2021, Altcont, LLC timely paid Corporate Asset Retention, Inc. $ 400 as an annual administrative fee for administrative services in accounting for the annual funding cost of Plaintiffs' corporate sponsored group life insurance policy; namely, the PDX policy. Those fees totaled $ 2,000.00.

52. <u>December 2021 Meeting</u>. On December 10, 2021, Plaintiffs Simona Marie and Tom Lewis met with Andy Brown on a Zoom.com video call, to discuss ways

COMPLAINT & JURY DEMAND - 20

to optimize their investment, in anticipation of making their final annual payment on Simona Marie's PDX policy. In the meeting, Andy Brown told Simona Marie and Tom Lewis -- to their surprise -- that  the PDX policy benefit would go to zero (*i.e.*, become worthless), because the contributions they had made to date would be inadequate to result in the projected policy benefit. He told Plaintiffs that in order to sustain the contract, they would have to make payments for years after 2022. Making such payments was not what he had led Plaintiffs to believe when they had purchased the policy or when they had reduced the policy benefit in exchange for lower premiums.

53. Illustrations Requested of Andy Brown.  After the December 10, 2021 meeting with Andy Brown, Plaintiffs requested of him and HFPI illustrations that would show how the decreased premiums would affect the policy benefit. Defendants Andy Brown and HFPI did not immediately provide such an illustration, but said "We have the illustration team at Pacific Life running the numbers to see if we can decrease the death benefit."  On December 15, 2021, Simona Marie emailed Andy Brown stating, "I have lots of questions," and requesting an explanation of the impact of the reduced premiums on her ability to receive benefits while alive and her desire to save the policy.

54. December 17, 2021 Email from Andy Brown.  On December 17, 2021, Andy Brown sent the following email to Simona Marie:

COMPLAINT & JURY DEMAND - 21

Hello Simona,

We are working with Pacific Life and the TPA to get the correct numbers.

The issue industry wide is that with the new AG49a regulations (took effect Dec 14, 2020), the government tells us what interest rate we can run illustrations at, we are not allowed to show actual returns.  Previous illustrations that we ran were based on actual performance.

As an example, your most recent interest earning percentage was 44% for the past 12 months (see attached).   But on the illustration, we cannot currently show interest earnings of more than 6.4%.   So on the illustration, we are missing about 37% of that actual performance.    The illustration allows us to show actual fees charged, but not actual performance of the interest credits.

I have an appointment with Corporate Asset Retention on Tuesday of next week to work this out for you. This is high priority for me.

Attached is the Segment Maturity Notice that shows the segment that matured on the Dec 15th had a return of 44% $68,496.82 was credited to you policy.

Talk to you soon,
Andy

Those statements were in part false and were misleading.  Andy Brown did not explain AG 49-A's prospective scope. His statements suggest that the prior illustrations provided to Plaintiffs were based on actual performance (of what is unclear, given that the illustrations were provided before the policy was in effect) and not the Performance Factor. Moreover, his statements suggest that despite AG 49-A, he intended to provide illustrations that did not conform to AG 49-A; but rather to again use cherry-picked past results that do not indicate future returns, perhaps even inflated by the mysterious Performance Factor, and perhaps while ignoring even PacLife's guidance as to the relevance of its projecting PDX policy performance when premiums are relatively low, to illustrate what those returns would be.  By December 24, 2021, Andy Brown still did not have a responsive

COMPLAINT & JURY DEMAND - 22

illustration and told Simona Marie that he would not be able to get projected numbers until January 3, 2022.

55. <u>Illustrations</u>.   After the December 10, 2021 meeting with Andy Brown, Plaintiffs also requested illustrations directly from PacLife, in order to get further information about the level of future contribution that would be needed to sustain the policy benefit.   After receiving a slew of such illustrations from late January 2022 through February 2022, and based on those illustrations, Plaintiffs determined that the future contributions required to sustain the policy benefit were not acceptable to them.

56. <u>Surrender</u>.   On April 11, 2022, Plaintiffs surrendered their PDX Policy.

57. <u>PDX Change to Simona Marie's PDX Policy</u>.   PacLife effectively acknowledged the deceptive quality of the PDX policy it sold to Simona Marie:   In 2019, PacLife reformed the PDX product, replacing it with a new IUL product called "Pacific Discovery Xelerator IUL 2" ("PDX 2").   Unlike the PDX policy sold to Plaintiffs, the PDX 2 policy did not contain a fixed-charge multiplier unless they bought a separate "Enhanced Performance Factor" rider.   No Defendant notified Plaintiffs of this change.

58. <u>Policy Charges 12/8/2021-Surrender</u>.   From Plaintiffs' contributions and accumulations, PacLife paid itself policy charges of $ 41,038.09 in the period December 8, 2021 to April 11, 2022.

COMPLAINT & JURY DEMAND - 23

1
2
3
4

59. <u>Payment Upon Policy Surrender</u>. Upon surrender, PacLife paid Plaintiffs $ 202,655.36 representing the difference between PacLife's stated accumulated investment value of $ 248,650.31, less a surrender charge of $ 45,994.95.

60. <u>Nonpayment Upon Policy Surrender</u>. Plaintiffs had paid PacLife $ 505,000 in premium.  Plaintiffs' premiums paid plus the $ 248,650.31 in accumulated policy investment value earned equals $ 753,650.31.  PacLife had extracted from Plaintiffs a total of $ 452,384.95 in policy charges from 2017 policy inception through the 2022 policy cancelation, plus the surrender charge of $ 45,994.95; a total of $ 498,379.90.  PacLife refused Simona Marie's request for a *pro rata* return of the last charge in the amount of $ 8,215.92, that PacLife had taken for the period following April 8, 2022, even though the policy was canceled as of April 11, 2022. That *pro rata* amount is $ 6,025.00.  The difference between $ 753,650.31 Plaintiffs paid and earned, and the $ 202,655.36 PacLife repaid them by check dated April 21, 2022, is $ 550,994.95.  No Defendant refunded any fees charged.

61. <u>Agency</u>.  All representations, actions and omissions of Andy Brown with respect to Plaintiffs were made within the course and scope of Andy Brown's duties as an agent of PacLife and the other Defendants. All representations, actions and omissions of HFPI with respect to Plaintiffs were made within the course and scope of HFPI's duties as an agent of Andy Brown, PacLife and the other Defendants. All representations, actions and omissions of PacLife with respect to Plaintiffs were

COMPLAINT & JURY DEMAND - 24

made within the course and scope of PacLife's duties as an agent of Andy Brown, HFPI and the other Defendants. All representations, actions and omissions of each Unknown Defendant with respect to Plaintiffs were made within the course and scope of that Unknown Defendant's duties as an agent of Andy Brown HFPI and PacLife.

## IV.    FIRST CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION - ALL DEFEDANTS

62. <u>Prior allegations</u>.  Plaintiffs reallege the allegations above.

63. <u>False statements</u>.  Defendants made false and/or materially misleading statements to Plaintiffs in presenting the features, benefits, performance, safety and risks of the PDX policy, as set forth above.

64. <u>Guidance</u>.   Defendants knew or reasonably should have known that the foregoing statements they made to Plaintiffs, including but not limited to statements concerning the features, benefits, performance, safety and risks of their PDX policy, were false and/or materially misleading, and would guide Plaintiffs in their business transactions.

65. <u>Negligence</u>.    Defendants were negligent in obtaining and/or communicating the false and/or materially misleading information to Plaintiffs.

66. <u>Reliance</u>. Plaintiffs relied upon the false and/or misleading statements made by Defendants.

67. <u>Reasonableness</u>.   Plaintiffs' reliance on the false and/or misleading

COMPLAINT & JURY DEMAND - 25

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

statements made by Defendants was reasonable.

68. <u>Causation</u>.    Defendants' false and/or misleading statements induced Plaintiffs' purchase and cancelation of the PDX policy and the related harms, expenses and other losses described herein, and were thus a cause in fact of harm to Plaintiffs.

## V.    <u>SECOND CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY - DEFENDANTS HFPI & ANDY BROWN & UNKNOWN DEFENDANTS</u>

69. <u>Prior allegations</u>.  Plaintiffs reallege the allegations above.

70. <u>Fiduciary Duties</u>.  Defendants HFPI and Andy Brown and any Unknown Defendants similarly situated as advisors and/or sellers to Plaintiffs of a PDX policy as a retirement investment owed Plaintiffs the duty to render to them correct and competent, carefully considered advice.   These duties extended to providing investment and financial planning advice, and were fiduciary duties. Those Defendants had the duty to Plaintiffs place Plaintiffs' interests above Defendants' own interests.  Those Defendants had the duty to Plaintiffs to use such knowledge and use such skill, prudence and diligence in preparing policy illustrations and in procuring for them insurance and explaining to them the cost and risks of the investment, as competent, careful members of their profession(s) would have and use under similar circumstances. These duties extended to providing investment and financial planning advice, and were fiduciary duties. These duties include the

COMPLAINT & JURY DEMAND - 26

obligation to exercise good faith, acting in the best interest of the client and avoiding conflicts of interest; including but not limited to the Defendants' interests in profit.

71. <u>Breach of Fiduciary Duties</u>.  Defendants breached their fiduciary duties to Plaintiffs in the course of selling Plaintiffs their PDX policy without adequate disclosures, by failing to advise them truthfully and adequately of industry critique of PDX policies, and by failing to correct and otherwise remedy their misrepresentations and wrongs, in the ways described above.

72. <u>Causation</u>.  Defendants HFPI, Andy Brown, and/or Unknown Defendants' breaches of fiduciary duty induced Plaintiffs' purchase and cancelation of the PDX policy, payment of policy premiums, and the related harms, expenses and other losses described herein, and were thus a cause in fact of harm to  Plaintiffs.

## VI.    THIRD CAUSE OF ACTION: PROFESSIONAL NEGLIGENCE - DEFENDANTS HFPI & ANDY BROWN & UNKNOWN DEFENDANTS

73. <u>Prior allegations</u>.  Plaintiffs reallege the allegations above.

74. <u>Duties</u>.  Defendants HFPI and Andy Brown and any Unknown Defendants similarly situated as advisors and/or sellers to Plaintiffs of a PDX policy owed Plaintiffs the duty to render correct and competent, carefully considered insurance and financial advice to Plaintiffs.  Those Defendants had the duty to Plaintiffs to use such knowledge and use such skill, prudence and diligence in preparing policy illustrations and procuring for them insurance, and explaining to them the cost and

COMPLAINT & JURY DEMAND - 27

risks of the investment, as competent, careful members of their profession(s) would have and use under similar circumstances. These duties extended to providing investment and financial planning advice, and were professional duties. These duties include the obligation to exercise good faith, acting in the best interest of the client and avoiding conflicts of interest; including but not limited to the Defendants' interests in profit.

75. <u>Breach</u>.  Defendants breached their fiduciary duties to Plaintiffs in the course of selling Plaintiffs their PDX policy without adequate disclosures, by failing to advise them truthfully and adequately of industry critique of PDX policies, and by failing to correct and otherwise remedy their misrepresentations and wrongs, in the ways described above, which fell below the standard of professional care for licensed life insurance brokers and financial advisors as practiced nationally, as well as in the states of Washington and Utah.

76. <u>Causation</u>.    Defendants' breaches in the foregoing regards caused Defendants HFPI, Andy Brown and/or Unknown Defendants' professional negligence induced Plaintiffs' purchase and cancelation of the PDX policy, payment of policy premiums, and the related harms, expenses and other losses described herein, and were thus a cause in fact of harm to Plaintiffs.

COMPLAINT & JURY DEMAND - 28

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

1
2
3

### VII.    <u>FOURTH CAUSE OF ACTION: VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (CHAPTER 19.86 RCW) - ALL DEFENDANTS</u>

4

77.<u>Prior allegations</u>.  Plaintiffs reallege the allegations above.

5

78.<u>CPA</u>.  Washington's Unfair Business Practices and Consumer Protection

6

Act at RCW 19.86.020 provides, "Unfair methods of competition and unfair or

7

deceptive acts or practices in the conduct of any trade or commerce are hereby

8

declared unlawful."

9

10

79.<u>Insurance Code Violations</u>.  Acts and practices that violate Washington's

11

insurance laws are *per se* unfair and deceptive within the meaning of Chapter 19.86

12

RCW.

13

80.<u>RCW 19.86.170</u>.   RCW 19.86.170 provides, in part, "[t]hat actions and

14

transactions prohibited or regulated under the laws administered by the insurance

15

16

commissioner shall be subject to the provisions of RCW 19.86.020 and all sections

17

of [the CPA] which provide for the implementation and enforcement of RCW

18

19.86.020…." Defendants' actions and transactions  are prohibited by those laws.

19

81.<u>Life insurance illustrations - content & delivery</u>.  RCW 48.23A.020(3)

20

provides, in part, "If a policy form is identified by the insurer as one to be marketed

21

with an illustration, a basic illustration prepared and delivered in accordance with

22

23

this chapter is required, …." RCW 48.23A.060(1(a) provides, "If a basic illustration

24

is used by an insurance producer or other authorized representative of the insurer in

COMPLAINT & JURY DEMAND - 29

the sale of a life insurance policy and the policy is applied for as illustrated, a copy of that illustration, signed in accordance with this chapter, shall be submitted to the insurer at the time of policy application. A copy shall also be provided to the applicant." Plaintiffs do not recall signing any of Defendants' illustrations.

82. Misrepresentations.  RCW 48.23A.030(2) provides, in part, "When using an illustration in the sale of a life insurance policy, an insurer or its producers or other authorized representatives shall not: … (b) Use or describe nonguaranteed elements in a manner that is misleading or has the capacity or tendency to mislead; … (f) Provide an applicant with an incomplete illustration; (g) Represent in any way that premium payments will not be required for each year of the policy in order to maintain the illustrated death benefits, unless that is the fact; …."  Defendants' descriptions and illustrations omitted information required to understand the nature and course of the policy investment and the effect of nonguaranteed elements, were incomplete, were misleading, and at least had the capacity and tendency to mislead Plaintiffs, and in fact misled them to believe that premium payments would not be required after the fifth annual premium was paid, in order to maintain the investment benefit for the rest of Plaintiff Simona Marie's life; all as described above.  For example, Andy Brown's representations, made on behalf of himself and HFPI, to Plaintiffs that they could lower their premium to $ 35,000 and failing to mention that without contributions in the years following the fifth annual contribution, the policy

COMPLAINT & JURY DEMAND - 30

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

charges would consume the investment, were materially misleading, unfair and deceptive communications. The PacLife's self-serving boilerplate invitation to Plaintiffs to "request illustrations with different assumptions to better understand how the policy charges and non-guaranteed elements, like interest crediting rates and/or policy loans and withdrawals, will affect the policy Accumulated Value and Death Benefit" does not make a partial or misleading illustration complete.

83. <u>Nonguaranteed elements</u>. As defined by RCW 48.23A.015(7), "Nonguaranteed elements" means the premiums, benefits, values, credits, or charges under a policy of life insurance that are not guaranteed or not determined at issue. By contrast, as defined by RCW 48.23A.015(6), "Guaranteed elements" "means the premiums, benefits, values, credits, or charges under a policy of life insurance that are guaranteed and determined at issue." The Performance Factor and policy charges are "nonguaranteed elements".

84. <u>Disciplined current scale</u>.  RCW 48.23A.030(3) provides, "If an interest rate used to determine the illustrated nonguaranteed elements is shown, it shall not be greater than the earned interest rate underlying the disciplined current scale." RCW 48.23A.015(4) provides, "'Disciplined current scale' means a scale of nonguaranteed elements constituting a limit on illustrations currently being illustrated by an insurer that is reasonably based on actual recent historical experience, as certified annually by an illustration actuary designated by the insurer.

COMPLAINT & JURY DEMAND - 31

Further guidance in determining the disciplined current scale as contained in standards established by the actuarial standards board may be relied upon if the standards:

"(a) Are consistent with all provisions of this chapter;

"(b) Limit a disciplined current scale to reflect only actions that have already been taken or events that have already occurred;

"(c) Do not permit a disciplined current scale to include any projected trends of improvements in experience or any assumed improvements in experience beyond the illustration date; and

"(d) Do not permit assumed expenses to be less than minimum assumed expenses."

The PDX Performance Factor and policy charges do not conform to the disciplined current scale statute.

85. Effect of each violation:  Pursuant to RCW 48.23A.090, each violation of Chapter 48.23A RCW violates RCW 48.30.010(1) and is an unfair method of competition and/or an unfair and/or deceptive act or practice, and thus subject to enforcement under Chapter 19.86 RCW.

86. RCW 48.30.010.  RCW 48.30.010 provides in part, "(1) No person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business as such

COMPLAINT & JURY DEMAND - 32

methods, acts, or practices are defined pursuant to subsection (2) of this section." Subsection (2) includes in such unfair methods of competition or in unfair or deceptive acts or practices those "as are expressly defined and prohibited by this code," or as the Washington insurance commissioner may, by properly promulgated regulation, define as unfair or deceptive.

87. <u>WAC 284-30-590(4)</u>. WAC 284-30-590(4) provides, "If an insured elects to not continue coverage beyond the effective date of any change of rates or terms, it is an unfair practice to refund any premium on less than a pro rata basis." And yet, Defendants wrongfully refunded their premium on less than a *pro rata* basis.

88. <u>RCW 48.30.040</u>. RCW 48.30.040 provides, "No person shall knowingly make, publish, or disseminate any false, deceptive or misleading representation or advertising in the conduct of the business of insurance, or relative to the business of insurance or relative to any person engaged therein." And yet, Defendants wrongfully gave Plaintiffs false expectations through the use of deception and misleading representations, as set forth above.

89. <u>RCW 48.30.090</u>. RCW 48.30.090 provides, "No person shall make, issue or circulate, or cause to be made, issued or circulated any misrepresentation of the terms of any policy or the benefits or advantages promised thereby, or the dividends or share of surplus to be received thereon, or use any name or title of any policy or class of policies misrepresenting the nature thereof." And yet, Defendants

COMPLAINT & JURY DEMAND - 33

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

wrongfully did so, as set forth above.

90. <u>RCW 48.110.140</u>.  RCW 48.110.140 provides, "The legislature finds that the practices covered by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW. Violations of this chapter are not reasonable in relation to the development and preservation of business. A violation of this chapter is an unfair or deceptive act or practice in the conduct of trade or commerce and an unfair method of competition, as specifically contemplated by RCW 19.86.020, and is a violation of the consumer protection act, chapter 19.86 RCW. Any service contract holder or protection product guarantee holder injured as a result of a violation of a provision of this chapter shall be entitled to maintain an action pursuant to chapter 19.86 RCW against the service contract provider or protection product guarantee provider and the insurer issuing the applicable service contract or protection product guarantee reimbursement insurance policy and shall be entitled to all of the rights and remedies afforded by that chapter."

91. <u>Unequal bargaining positions</u>. Plaintiffs and Defendants were in unequal bargaining positions with respect to each other because Defendants had knowledge of material facts which, if communicated to Plaintiffs, would have rendered the investment unacceptable to Plaintiffs;

92. <u>Expectation of service</u>.  Plaintiffs were justified in expecting that their best

COMPLAINT & JURY DEMAND - 34

interests would be served by the Defendants' product, representations and advice.

93. <u>Wrongful practices</u>.    Defendants engaged in wrongful practices as demonstrated by the facts alleged above, including but not limited to the inherent deceptive nature of PDX policies, the materially misleading use and description of PacLife's Performance Factor and other nonguaranteed elements in its standardized illustrations, marketing materials, and policy documents used to market the PDX policies to brokers and consumers. PacLife sought to skirt the AG 49 requirements, and thereby violated industry fairness standards as well as the intention and spirit of the AG 49 standard.

94. <u>Profit</u>.    These wrongful practices had the effect Defendants intended; namely, to cause Plaintiffs in the state of Washington to agree to enter into a PDX insurance contract and to make payments pursuant to that contract, resulting in unjust enrichment to Defendants.  The public impact of PacLife's deceptive practices was significant: PacLife bragged that it was the top-ranked IUL insurance performer in the third quarter of 2017, and that this status was largely due to "its top-selling [IUL] product, Pacific Discovery Xelerator."  In 2019, Pac Life bragged that PDX was "the #1 selling IUL for the last two years in a row."

95. <u>Capacity to mislead</u>.  Defendants' wrongful acts and practices described herein had the capacity to mislead and were likely to mislead and injure reasonable consumers, and in fact misled Plaintiffs, by creating unrealistically optimistic

COMPLAINT & JURY DEMAND - 35

impressions.

96. <u>Unfair and deceptive</u>. Defendants' wrongful acts and practices described herein were unfair methods of competition with respect to Plaintiffs as well as sellers of other life insurance policies and financial investment products on the market, and unfair and/or deceptive to Plaintiffs and others similarly situated.

97. <u>Causation</u>.  Defendants' unfair and deceptive acts and practices caused induced Plaintiffs' purchase and cancelation of the PDX policy, payment of policy premiums, and the related business and economic losses described herein, and were thus a cause in fact of harm to Plaintiffs.

98. <u>Public interest</u>.  The wrongful acts described above affected the public interest because the method of marketing PDX policies was widespread and, apparently, financially profitable for Defendants at the expense of their customers, including but not limited to Plaintiffs, and violated numerous Washington statutes, regulations (such as those identified above) and common laws (such as the causes of action asserted herein) intended to protect the public against such harms.

## VIII.  <u>FIFTH CAUSE OF ACTION: BREACH OF CONTRACT - ALL DEFENDANTS</u>

99. <u>Prior allegations</u>.  Plaintiffs reallege the allegations above.

100. <u>Contracts</u>.  Plaintiffs had contracts with Defendants HCFI and Andy Brown to provide accurate information and professional advice and services in connection with purchase of the PDX policy.  Plaintiffs had a contract with PacLife

COMPLAINT & JURY DEMAND - 36

as stated in the PDX contract and the other representations made by its agents, including but not limited to HCFI, Andy Brown and other Defendants.

101. <u>Breaches of Contract</u>.  Every contract has an implied duty of good faith and fair dealing.  Each Defendant breached that duty to Plaintiffs, causing them to lose their premiums paid toward the PDX policy and their earnings thereon, less the sum PacLife refunded, and to incur expenses related to servicing the PDX policy, detailed below.  Defendants' breaches of contract duty induced Plaintiffs' purchase and cancelation of the PDX policy, payment of policy premiums, and the related business and economic losses described herein, and were thus a cause in fact of harm to Plaintiffs.

## IX.   <u>INJURIES & DAMAGES</u>

102. <u>Prior allegations</u>.  Plaintiffs reallege the allegations above.

103. <u>Injuries & Damages</u>.  Plaintiffs' injuries and actual damages include, but are not limited to:

    a.  The promised expectancy of $ 117,000 per year, as stated in Andy Brown's email of October 11, 2019, from Simona Marie's age 65 through her actuarial life expectancy, plus any death benefit or other residual value allowed by the policy; or, alternatively,

COMPLAINT & JURY DEMAND - 37

b. The difference between $ 753,650.31 Plaintiffs paid Defendants and earned on investment, and the $ 202,655.36 PacLife repaid them by check dated April 21, 2022; which equals $ 550,994.95;

c. The administrative fees paid to Corporate Asset Retention, Inc. in the amount of $ 2,000.00;

d. The cost to establish, maintain dissolve, and wind up Altcont, LLC in amounts to be determined; including but not limited to formation and accountant fees, legal services, business license fees, and state and federal taxes, and other expenses, in the total amount of $ 104,047.22, as follows (not including PDX policy premiums and payments to Corporate Asset Retention):

2017

- Secretary of State Corporation Fee Formation $ 200.00

    2017 Total $ 200.00

2018

- IRS $ 23,908.44
- Department of Revenue WA $ 6,675.00
- Business License Fee $ 59.00
- Secretary of State Annual Report Fee $ 60.00
- Accountant payments $ 2,435.00

    2018 Total $ 33,137.44

COMPLAINT & JURY DEMAND - 38

2019

- IRS $ 19,952.48
- Department of Revenue WA $ 3,633.42
- Business License Fee $  87.67
- Secretary of State Annual Report Fee $ 60.00
- Accountant payments $ 2,710.00
- Business checks payment $ 23.70

2019 Total $ 26,467.27

2020

- IRS $ 22,613.28
- Department of Revenue WA $ 65.70
- Business License Fee $ 50.00
- Secretary of State Annual Report Fee $ 60.00
- Accountant payments $ 2,328.86

2020 Total $ 25,117.84

2021

- IRS $ 12,964.92
- Department of Revenue WA $ 86.08
- Business License Fee $ 50.00
- Secretary of State Annual Report Fee $ 60.00
- Accountant payments $ 2,338.35

2021 Total $ 15,499.35

2022

- IRS $ 210.40
- Department of Revenue, State of Washington $ 26.52
- Accountant payments $ 3,121.65

COMPLAINT & JURY DEMAND - 39

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

- Secretary of State – Dissolution Fee $ 20.00

2022 Total $ 3,378.57

<u>2023</u>

- Accountant payments $ 246.75

2023 Total $ 246.75;

e.  The reasonable value of Simona Marie and Tom Lewis's labor involved in dealing with accounting, banking, payments, review of documents, phone calls, meetings, estimated at $ 200 per hour, 3 hours per month, for 55 months, a total of $ 33,000; and

f.  All other costs incurred in establishing the corporate sponsored group life insurance policy, in amounts to be determined.

104. <u>California Punitive Damages</u>.    Punitive damages are available to Plaintiffs against Defendants PacLife, HFPI and Andy Brown under Washington conflict-of-law principles, and California Civil Code Section 3294, because:

a.  A place where the conduct causing the injury, including but not limited to the Defendants' communications to Plaintiffs and other Defendants, originated in California;

b.  PacLife's PDX policies were, on information and belief, brokered and/or issued from California to persons and/or entities in California and other states and commonwealths of the United States, including but

COMPLAINT & JURY DEMAND - 40

not limited to Washington, and were regulated by California;

c.  PDX policies were marketed to and issued to California residents;

d.  The basic policies of California law regulating the fields of insurance and financial investment, including but not limited to the deterrence of misconduct committed by and through its citizens, particularly those in state-regulated industries, will be served by imposing punitive damages here;

e.  The policy, purposes and expectations sought to be achieved by California's punitive damages law will be served by awarding punitive damages in this matter against PacLife, which is located in California, and all Defendants, each of which on information and belief does business in and/or from California;

f.  Certainty, predictability and uniformity of result will be furthered by applying the California law of punitive damages;

g.  This Court is fully capable of determining and applying California law;

h.  The facts giving rise to this lawsuit demonstrate unequal knowledge and bargaining power favoring Defendants, who are or should be sophisticated merchants of insurance and financial investment products, and familiar with the products they create and sell, over Plaintiffs, who are not in those lines of business and, due to the

COMPLAINT & JURY DEMAND - 41

complexity of the product and lack of full and fair disclosure of and, due to the complexity of the product and lack of full and fair disclosure of the PDX policy features, were not sufficiently familiar with those products at the time of purchase;

i.  Defendants' misconduct identified above constitutes oppression and malice within the meaning of California Civil Code Section 3294.

105. <u>Utah Punitive Damages</u>.   Punitive damages are available to Plaintiffs against Defendants PacLife, HFPI and Andy Brown under Washington conflict-of-law principles, and Utah Code Section 78B-8-201, because:

a.  A place where the conduct causing the injury, including but not limited to the Defendant's communications to Plaintiffs, originated in Utah;

b.  PacLife's PDX policies were brokered through Defendants HFPI and Andy Brown, both located in Utah and regulated by Utah;

c.  PDX policies were marketed to and issued to persons and/or entities in Utah and other states and commonwealths of the United States, including but not limited to Washington,;

d.  The basic policies of Utah law regulating the fields of insurance and financial investment, including but not limited to the deterrence of misconduct committed by and through its citizens, particularly those in state-regulated industries, will be served by imposing punitive damages

COMPLAINT & JURY DEMAND - 42

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

here;

e.  The policy, purposes and expectations sought to be achieved by Utah's punitive damages law will be served by awarding punitive damages in this matter against Defendants that are located in and do business in and/or from Utah;

f.  Certainty, predictability and uniformity of result will be furthered by applying the Utah law of punitive damages;

g.  This Court is fully capable of determining and applying Utah law;

h.  The facts giving rise to this lawsuit demonstrate unequal knowledge and bargaining power favoring Defendants, who are or should be sophisticated merchants of insurance and financial investment products, and familiar with the products they create and sell, over Plaintiffs who are not in those lines of business and, due to the complexity of the product and lack of full and fair disclosure of the PDX policy features, were not sufficiently familiar with those products at the time of purchase;

i.  The conduct as described above of one or more Defendants was knowingly and/or recklessly indifferent to Plaintiffs' rights and financial interests.

COMPLAINT & JURY DEMAND - 43

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

## X.    <u>**RELIEF REQUESTED**</u>

WHEREFORE, Plaintiffs respectfully request that this Court grant and award them the following relief jointly and severally against the Defendants:

A. Monetary damage for:

      a.  Expectancy damages of $ 117,000 per year from Simona Marie's age 65 through her actuarial life expectancy as determined by Washington law at the time of the award (at the time of filing this Complaint estimated to be at least 28 years, which would be a product of $3,393,000), plus any death benefit or other residual value allowed by the policy in an amount to be determined at trial; or all of the following in subparts b. through f.:

      b.  Restitution of $ 550,994.95, consisting of PDX policy premiums paid in the total amount of $ 505,000.00, plus earnings thereon of $ 248,650.31, less the sum refunded to date of $ 202,655.36;

      c.  Administrative fees paid to Corporate Asset Retention, Inc. of $ 2,000.00;

      d.  Plaintiffs' cost to establish, maintain dissolve, and wind up Altcont, LLC, in the amount of $ 104,047.22 and/or additional amount to be determined at trial;

COMPLAINT & JURY DEMAND - 44

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

    e.  Labor value of Plaintiffs Simona Marie and Tom Lewis associated with administration related to the PDX policy, in the amount of $33,000 or such other amount determined at trial; and

    f.  All other costs incurred in establishing the corporate sponsored group life insurance policy, in amounts to be determined at trial;

B.  Plaintiffs Simona Marie's and Tom Lewis's emotional distress in an amount to be determined at trial;

C.  Treble damages in the maximum amounts authorized by RCW 19.86.090 for damages caused by each violation of the Washington Consumer Protection Act;

D.  Pre-judgment and post-judgment interest to the maximum extent allowed by law;

E.  Punitive damages in the maximum amounts authorized by law;

F.  An award to Plaintiffs of their reasonable attorneys' fees and costs to the maximum extent authorized by law; and

G.  Such other and further legal and/or equitable relief as is just and proper.

## XI.  **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial on all the issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

COMPLAINT & JURY DEMAND - 45

Stritmatter Kessler Koehler Moore
3600 15th Avenue West, Suite 300
Seattle, WA  98119
(206) 448-1777

DATED June 27, 2023.

STRITMATTER KESSLER KOEHLER MOORE

By: s/ Daniel R. Laurence
    Daniel R. Laurence, WSBA #19697

By: s/ Brad J. Moore
    Brad J. Moore, WSBA #21802

Attorneys for Plaintiffs

3600 15th Ave. W., Ste. 300
Seattle, WA 98119
Telephone (206) 448-1777
Facsimile: (206) 728-2131
Email:  dan@stritmatter.com
        brad@stritmatter.com

COMPLAINT & JURY DEMAND - 46